**The below described is SIGNED.**

**Dated: February 23, 2007**_____

**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Case No. 05-27551 |
| **MARC IAN GARDNER and JILL GARDNER,** | Chapter 7 |
| Debtors | |
| **KENNETH A. RUSHTON, Chapter 7 Trustee,** | |
| Plaintiff, | |
| vs. | Adversary Proceeding No. 05-2605 |
| **DRIVE FINANCIAL SERVICES, a Delaware limited partnership; and BRENT BROWN TOYOTA, a Utah corporation,** | |
| Defendants. | |

## MEMORANDUM DECISION

Before the Court is the Chapter 7 trustee's (Trustee) Motion for Summary Judgment

(Trustee's Motion) asking the Court to determine that the transfer of a security interest in a car to

Drive Financial Services (Drive Financial) constitutes a preferential transfer under 11 U.S.C.

§ 547(b)[1] that may be avoided by the Trustee, and to grant judgment in favor of the estate against

Drive Financial in an amount representing the value of the security interest determined at the

time of its transfer.  Also before the Court is Drive Financial's Motion for Summary Judgment

(Drive Financial's Motion) conceding that the transfer of the security interest was a preference,

but requesting that this Court conclude that the only remedy available to the Trustee under § 550

is avoidance of Drive Financial's lien.  The Court has considered the facts properly before it, the

arguments presented by counsel, has conducted an independent review of applicable law, and

finds that notice was properly given to all parties in interest.  Based on the foregoing, the Court

issues the following decision.

## 1.    JURISDICTION AND LEGAL STANDARD

This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), and the Court may enter a final

order.  Both parties have moved for summary judgment under Federal Rule of Bankruptcy

Procedure Rule 7056.  Rule 7056 makes summary judgment appropriate when, after

consideration of the record, the Court determines that "there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."[2]  In applying

this standard, the Court examines the factual record in the light most favorable to the nonmoving

party.[3]  There is no genuine issue of fact "[w]here the record taken as a whole could not lead a

---

[1]    Future statutory references are to title 11 of the United States Code as it existed prior to
the general effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
unless otherwise noted.

[2]    FED. R. BANKR. P. 7056, incorporating FED. R. CIV. P. 56(c).

[3]    *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

rational trier of fact to find for the non-moving party."[4]  The moving party has the burden of

establishing that it is entitled to summary judgment.

## II.   UNDISPUTED FACTS

The parties do not dispute the following material facts:

1.  On March 11, 2005, Marc Ian and Jill Gardner (the "Debtors") purchased a 2004 Mazda (the "car") from Brent Brown Toyota.

2.  That same day the Debtors executed a Retail Installment Contract and Security Agreement and a Motor Vehicle Contract of Sale (the "Contract") in favor of Brent Brown Toyota.

3.  The Contract required Brent Brown Toyota to "provide financing arrangements for the purchase of the [car]. . ." and that Brent Brown Toyota "has or will perfect a security interest in the [car] in favor of [Drive Financial]."

4.  Drive Financial, pursuant to a Dealer Retail Agreement (Dealer Agreement), agreed to purchase the Contract from Brent Brown Toyota.

5.  The Contract, including the security interest of Brent Brown Toyota provided therein, was assigned to Drive Financial on March 11, 2005.

6.  The cash purchase price of the car was $18,056.02.  The value of the car on the date of purchase was also $18,056.02.

7.  The Debtors financed $17,383.07 of the purchase price of the car.

8.  As of March 11, 2005, the value of Drive Financial's lien was $17,383.07 and was fully secured by the value of the car.

9.  Sometime after executing the Contract, Brent Brown prepared and filed an application for Utah title (Title Application).

10. Under the Dealer Agreement, Brent Brown Toyota is responsible "within 20 days . . . [to] file and record all documents necessary to properly perfect the valid and enforceable first priority security interest of [Drive Financial] in the [car] and shall send [Drive Financial] all security interest filing receipts."

---

[4]  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

11.     It was not until April 7, 2005 (27 days after the Contract was signed) that the Title Application was received and filed by the Department of Motor Vehicles.

12.     According to the expert report of Christopher Rideout (Mr. Rideout), the market value of the car on April 7, 2005, the day of lien perfection, was $16,225.

13.     On May 10, 2005, the Debtors filed a chapter 7 bankruptcy petition.

14.     On the date the petition was filed, the Debtors' debts exceeded their assets.  They had approximately $72,000 in unsecured debt and no unencumbered non-exempt assets.

15.     The market value of the car on May 10, 2005 was $16,000.

16.     The market value of the car on July 25, 2005, was $14,150.

17.     The Debtors paid their first monthly installment payment under the terms of the Contract on April 25, 2005 in the amount of $504.57.

18.     Thereafter, the following payments were made by the Debtors under the terms of the Contract:

            a. $504.57 – June 2005
            b. $505 – September 2005
            c. $1,019.66 – September 2005
            d. $504.47 – November 2005
            e. $504.57 – November 2005

19.     On July 5, 2005, a reaffirmation agreement between the Debtors and Drive Financial was filed in the Debtors' bankruptcy case.

20.     Because of the Debtors' bankruptcy filing and because Brent Brown Toyota did not properly perfect Drive Financial's security interest in the car within 20 days, Drive Financial demanded that Brent Brown Toyota repurchase the Contract.

21.     Pursuant to the terms of the Dealer Agreement between Drive Financial and Brent Brown Toyota, the Contract was reassigned to Brent Brown Toyota on or about November 22, 2005.

### III.  DISCUSSION

Drive Financial has not disputed that the transfer of the security interest in the car

constitutes an avoidable preferential transfer.  As a result, the Court finds that each element of

§ 547 has been established by the undisputed facts.  Further, the Court determines from the

undisputed facts that Drive Financial was an initial transferee of the transfer of the security

interest in the car, or an entity for whose benefit such transfer was made.  The Trustee may

recover from Drive Financial pursuant to § 550.

The only remaining issue before the Court is the appropriate recovery under § 550.

Drive Financial argues that the appropriate remedy is recovery of the property transferred — in

this case, its lien on the car.  Further, it argues that the Court should only exercise its discretion to

order recovery of the value of the lien if ordering recovery of the lien itself would be inequitable

because § 550 prefers recovery of property transferred over recovery of the value of the property

transferred.  The Trustee, on the other hand, seeks judgment for the value of the security interest

with such value determined at the time of its transfer.

It is within this Court's discretion to order either recovery of the property transferred or

its value.[5]  Section 550 provides: "Except as provided in this section, to the extent that a transfer

is avoided under . . . § 547 . . . of this title, the trustee may recover, for the benefit of the estate,

the property transferred, or, if the court so orders, the value of such property . . . ."  The purpose

of § 550 is "to restore the estate to the financial condition it would have enjoyed if the transfer

---

[5]     *First Software Corp. v. Computer Associates Int'l, Inc. (In re First Software Corp.),* 107 B.R. 417, 423 (D. Mass. 1989) (holding that bankruptcy court did not abuse its discretion when ordering party to pay value of the property because the property had significantly depreciated in value); *Tidwell v. Chrysler Credit Corp. (In re Blackburn)*, 90 B.R. 569, 573 (Bankr. M.D. Ga. 1987) (ordering recovery of the value of the car due to its depreciable nature).

I:LAW/OPINIONS/Opin0509                        -5-

had not occurred"[6] and the focus "is not on what the transferee gained by the transaction but

rather on what the bankruptcy estate lost as a result of the transfer."[7]  "Factors considered by

courts in making this decision of whether to order recovery of the property or its value include

whether the property is recoverable, whether the property has diminished in value by virtue of

depreciation or conversion, whether there is conflicting evidence as to the value of the property

and whether the value of the property is readily determinable and a monetary award would result

in a savings to the estate."[8]  If it is determined that a monetary award is appropriate, the Court

must determine when to value the property.  The Tenth Circuit has stated that "the only generally

applicable rule in regard to § 550(a) valuation is that 'the time at which the value is measured

depends upon the circumstances of the case.'"[9]

        The first factor to consider is whether the security interest that was transferred is

recoverable.  Drive Financial demanded that Brent Brown Toyota repurchase the Contract and,

therefore, the Contract was reassigned to Brent Brown Toyota on or about November 22, 2005.

As a result, Drive Financial does not currently hold the beneficial interest in the lien.[10]  The Court

---

[6]        *Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Resources, Inc.)*,
354 F.3d 1246, 1266 (10th Cir. 2004) (internal citations and quotations omitted) (analyzing § 550
recovery in the context of a fraudulent conveyance).

[7]        *Id.* at 1267 (internal citations and quotations omitted).

[8]        5 COLLIER ON BANKRUPTCY ¶ 550.02[3] (15th ed. 2006) (citing *In re Centennial Textiles,
Inc.*, 220 B.R. 165, 177 (Bankr. S.D.N.Y. 1998); *Morris v. Kansas Drywall Supply Co. (In re Classic
Drywall)*, 127 B.R. 874, 877 (D. Kan. 1991)).

[9]        *Integra*, 354 F.3d at 1267 (quoting *Pritchard v. Brown (In re Brown)*, 118 B.R. 57, 60
(Bankr. N.D. Tex. 1990)) (other citations omitted).  Some courts have found that when dealing with
depreciable property the proper date of valuation is the date of the transfer.  *Blackburn*, 90 B.R. at 573.

[10]        On May 30, 2006, Drive Financial filed an Offer of Judgment indicating that it was
willing to allow its lien "to be of no effect and surrendering to Trustee any and all interest of [Drive

makes no determination at this time if the security interest is recoverable from Brent Brown

Toyota as an immediate or mediate transferee of Drive Financial.[11]  As a result of these facts, this

factor weighs in the Trustee's favor.  It is also worth noting that the underlying car appears to still

be in the possession of the Debtors, and it has not been sold to a third party.  If the Trustee

attempted to sell the car, it may adversely impact the Debtors who are not parties to this

litigation.  In July 2005, they reaffirmed their debt with Drive Financial.  They may continue to

be obligated on the underlying debt if the Trustee exercised Brent Brown's lien rights, foreclosed

the security interest, and liquidated the car.

The second factor is whether Drive Financial's security interest has depreciated in value.

The value of Drive Financial's lien and the value of the car itself are inextricably intertwined

because the value of the lien is dependent upon (1) how much is owed to Drive Financial, and (2)

the value of the car serving as collateral.  At the time the Debtors purchased the car its market

value was $18,056.92.  The value of Drive Financial's lien at that time was equal to the unpaid

balance on the car or $17,383.07.  Twenty-seven days later, the market value of the car had

dropped to $16,225.  With the Debtors' April 25, 2005 payment on the debt of $504.57, the

amount of the lien may have dropped to $16,878.50 or so, without considering accrual of interest.

By May 10, 2005, the value of the car had depreciated to $16,000.  The undisputed evidence

---

Financial] in and to the [car]."  The Court questions how Drive Financial could have made this Offer of
Judgment when, as of November 2005, it no longer had any beneficial interest in the lien because Drive
Financial had assigned its rights to Brent Brown Toyota.

[11]     Brent Brown Toyota is not a movant in the cross motions for summary judgment and has
not, prior to the hearings on the motions, participated in briefing.  During oral argument, however, the
attorney for Brent Brown Toyota disclosed to the Court and parties that an Offer of Judgment had been
filed that morning.  The consequence of the filing of this Offer of Judgment is not within the scope of
this determination.

presented by the expert report of Mr. Rideout shows that the car has depreciated significantly

since the transfer.  In addition, the Debtors' payments have also reduced the amount of the debt

by approximately $3,038.17, not including accrued interest. Both factors reduce the value of the

security interest.  As stated before, the purpose of § 550 is to restore the estate to the financial

position it would have had if the transfer had not occurred.  If this Court ordered recovery of the

security interest, the estate would have a security interest in a three-year-old car that is worth

significantly less than it was at the time of the transfer of the lien.  Although the Debtors'

obligation on the debt has also been reduced, it does not appear that the few payments on the debt

would create equity not eroded by depreciation, and the security interest would still have a value

significantly less than when transferred.  Were the Court to order recovery of the security

interest, it would not return the estate to the position it would have been in if the transfer had not

occurred.  If the Trustee then elected to foreclose the security interest, or if the car was free and

clear, the estate would recover less than the amount of the security interest at the time of the

transfer.  The Court finds that this factor weighs in the Trustee's favor.

The third factor is whether a monetary award would work a savings for the estate.  The

Trustee has accurately stated the three options he has if the Court were to order the recovery of

the security interest as a remedy: (1) the Trustee could collect future payments from the Debtors

(but the Debtors are obligated by their reaffirmation agreement to pay less than the value of the

lien on April 7, 2005); (2) the Trustee could sell the lien to a third party (but there is no evidence

a third party would purchase the $16,225 lien at full value); or (3) the Trustee could sell the car

and retain the proceeds (at whatever value the car now has).  Each option does in fact have costs

and each option would likely return less to the estate than $16,225.  Ordering a monetary

judgment, however, would work a savings to the estate because there is no cost in the payment of money and the estate would receive the full value of the transferred property. Again, this factor weighs in the Trustee's favor.

Finally, the Court must examine whether the value of the security interest is easily determined. The Trustee has supplied the Court with Mr. Rideout's expert report that values the car on various dates. Drive Financial has objected to these valuations in its response to the Trustee's Statement of Undisputed Facts stating that the valuations are "disputed" and that they are immaterial. As stated earlier, however, this Court agrees that the value of Drive Financial's security interest is tied closely to the value of the car. Drive Financial has not come forward with its own expert or any evidence showing the value of the security interest at the time of the transfer. As a result, Mr. Rideout's opinion is undisputed, and the Court finds that the value of the security interest at the time of the transfer is easily determined. This factor weighs in the Trustee's favor.

## IV.   CONCLUSION

Because the Court has discretion to determine whether to order a monetary award or recovery of the property and because the relevant factors examined weigh in the Trustee's favor, this Court finds that under § 550, the Trustee is entitled to a judgment representing the value of the transferred property. That amount is $16,225. For these reasons, the Court **GRANTS** the Trustee's Motion and **DENIES** Drive Financial's Motion. Judgment shall be entered accordingly.

_____END OF DOCUMENT _____

**CERTIFICATE OF MAILING**

The foregoing **MEMORANDUM DECISION** shall be served upon the following by the

Bankruptcy Noticing Center.

Adam S. Affleck
Wilford A. Beesley, III
Prince Yeates & Geldzahler
City Center 1
Ste. 900
175 East 400 South
Salt Lake City, UT 84111
*Attorneys for Kenneth A. Rushton, Trustee*

Kim R. Wilson
P. Matthew Cox
Snow Christensen & Martineau
10 Exchange Place 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145

*Attorneys for Drive Financial Services*

Zachary T. Shields
Callister Nebeker & McCullough
Gateway Tower East, Suite 900
10 East South Temple
Salt Lake City, UT 84133

*Attorneys for Brent Brown Toyota*

I:LAW/OPINIONS/Opin0509          -10-